**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

LYNDA GARNER GOLDSTEIN,
MICHAEL D. DITULLIO,
CRAIG R. LENDING,
DEBORAH A. INDIVINO,
JAMES B. THOMPSON,
SHIRLEY J. THOMPSON,
CRAIG D. CARSON,
JOSEPH CALLAN,
KATHLEEN M. IANNONE,
and ANGELINA RIVERA

Plaintiffs

v.                                                                    **COMPLAINT**

MONROE COUNTY,
ADAM BELLO, as the County Executive of Monroe County,
SABRINA LAMAR, as President of the Monroe County Legislature,
STEVEN BREW, as the Majority Leader of the Monroe County Legislature,
YVERSHA ROMAN, as the Minority Leader of the Monroe County Legislature,
JACKIE ORTIZ, as a Monroe County Elections Commissioner,
and LISA P. NICOLAY, as a Monroe County Elections Commissioner,

Defendants.

Plaintiffs, above-named, by their attorneys, PENBERTHY LAW GROUP LLP, for their

Complaint against the defendants, above-named, alleges as follows:

**JURISDICTION AND VENUE**

1. This court has jurisdiction over plaintiff's federal constitutional claims pursuant to 28 USC

§1331, 28 USC §1343, and 42 USC §1983.

2. This court has jurisdiction to declare a judgment pursuant to 28 USC §2201.

3. This court has supplemental jurisdiction over plaintiffs related state law claims pursuant to

28 USC §1367.

4. Venue of this action is properly in this district, pursuant to 28 U.S.C. § 1391(b), on the grounds that defendants are residents of this district and the claims herein alleged arose in this district.

**INTRODUCTION**

5. This is a civil rights action brought seeking redress for Defendants' deprivation of Plaintiffs' rights, privileges, and immunities secured by the Constitution and laws of the United States and the State of New York.

6. Plaintiffs allege that their vote, as well as the vote of other residents in county legislative districts, are "minimized and diluted" when compared with the residents of other districts.

7. Under the New York Municipal Home Rule, the United States and New York State Constitutions and in accordance with the Monroe County Charter, the Monroe County Legislature and Monroe County are required to reapportion all their legislative districts after the decennial census by the United States Census Bureau.

8. Such reapportionment shall comply with the requirements of the United States and New York State Constitutions and laws, including the equal protection clause of the Fourteenth Amendment of the United States Constitution, in particular the principal of "one person, one vote".

9. As it is now, persons who reside within a Monroe County legislative district comprised of a population greater than the ideal value, determined by the population of the county divided by the number of districts prescribed, are deprived of the same vote and representation as that cast by a person residing within a county legislative district comprised of a population less than the ideal value.

10. In order to create a legislative redistricting plan for Monroe County, the County Legislature must approve a Local Law creating revised election district maps to comply with constitutional

requirements and, to attain the effect of a Local Law, the County Executive must approve such Local Law.

11. During the course of the last six months, the Legislature and the County Executive have been unable to agree on a plan for legislative reapportionment in Monroe County for the elections to the County Legislature to be held in 2023. While the Legislature has approved plans with majority votes, the County Executive has vetoed those plans and the Legislature has been unable or unwilling to override the County Executive's veto.

12. As a consequence of the failure to approve a reapportioned legislative map consistent with the federal and state constitutions, state law, and the Monroe County Charter following the 2020 census, the elections to all 29 seats in the Monroe County Legislature County in 2023 will be thrown into a quagmire absent immediate court intervention.

13. Accordingly, Plaintiffs ask this Court to avert this impending electoral disaster by appointing a special master to effectuate independent redistricting based on constitutional principles and fair criteria for the Monroe County Legislature elections for 2023 and thereafter until the next decennial census.

## THE PARTIES

14. Plaintiff LYNDA GARNER GOLDSTEIN is a registered voter in Monroe County in the State of New York, in the current 14th Legislative District. The plaintiff is a retired public school counselor. She formerly was a member of the Monroe County Legislature. The plaintiff desires to communicate with candidates for the Monroe County Legislature running in her district in the 2023 primary and general election, and she is interested in volunteering for, or contributing money to one of those candidates. However, without knowing the new district lines, this plaintiff is unable

to discern which district she will reside in or who will be candidates for the County Legislature from that district.

15.     Plaintiff DEBORAH A. INDIVINO is an attorney and lives in the Town of Greece, County of Monroe.  She is a registered voter in Monroe County in the State of New York. INDIVINO desires to communicate with candidates for the Monroe County Legislature running in her district in the 2023 primary and general election, and she is interested in volunteering for, or contributing money to one of those candidates.  However, without knowing the new district lines, the plaintiff is unable to discern which district she will reside in or who will be candidates for the County Legislature from that district.

16.     Plaintiff MICHAEL D. DITULLIO is a registered voter in Monroe County in the State of New York, in the current 8th Legislative District. The plaintiff works in Webster New York as a teacher.  He is a registered voter in Monroe County in the State of New York. The plaintiff ran for election as a member of the Monroe County Legislature in 2022 and is considering running again for the same office.  He also desires to communicate with candidates for the Monroe County Legislature running in his district in the 2023 primary and general election, and he is interested in volunteering for, or contributing  money to one of those candidates.  However, without knowing the new district lines, the plaintiff is unable to discern which district he will reside in or who will be candidates for the County Legislature from that district.

17.     Plaintiff JOSEPH A. CALLAN has resided in Penfield New York, Monroe County for more than 30 years and he is a retired businessman and a registered voter in Monroe County in the State of New York. Callan desires to communicate with candidates for the Monroe County Legislature running in his district in the 2023 primary and general election, and he is interested in volunteering for, or contributing money to one of those candidates.  However, without knowing

4

the new district lines, the plaintiff is unable to discern which district he will reside in or who will be candidates for the County Legislature from that district.

18. Plaintiff CRAIG R. LENDING is a Vietnam era veteran of the US Air Force 1970, a retired Associate Professor from SUNY Brockport and he is a registered voter in the Town of Pittsford, Monroe County in the State of New York. The plaintiff desires to communicate with candidates for the Monroe County Legislature running in his district in the 2023 primary and general election, and he is interested in volunteering for, or contributing money to one of those candidates. However, without knowing the new district lines, this plaintiff is unable to discern which district he will reside in or who will be candidates for the County Legislature from that district.

19. Plaintiff SHIRLEY J. THOMPSON is former member of the Rochester City School District Board of Education, lives in the current 29th Legislative District and has done so 36 years and is now retired from the American Red Cross. She is also a registered voter in Monroe County in the State of New York. The plaintiff desires to communicate with candidates for the Monroe County Legislature running in her district in the 2023 primary and general election, and she is interested in volunteering for, or contributing money to one of those candidates. However, without knowing the new district lines, this plaintiff is unable to discern which district she will reside in or who will be candidates for the County Legislature from that district.

20. Plaintiff JAMES B. THOMPSON is a resident of the 29th Legislative District, and a retired physical therapist. He is also a registered voter in Monroe County in the State of New York. The plaintiff desires to communicate with candidates for the Monroe County Legislature running in his district in the 2023 primary and general election, and he is interested in volunteering for, or contributing money to one of those candidates. However, without knowing the new district lines,

this plaintiff is unable to discern which district he will reside in or who will be candidates for the County Legislature from that district.

21. Plaintiff CRAIG D. CARSON is an attorney and resides in the Town of Greece. He is also a registered voter in Monroe County in the State of New York. The plaintiff desires to communicate with candidates for the Monroe County Legislature running in her district in the 2023 primary and general election, and he is interested in volunteering for, or contributing money to one of those candidates. However, without knowing the new district lines, this plaintiff is unable to discern which district he will reside in or who will be candidates for the County Legislature from that district.

22. Plaintiff KATHLEEN M. IANNONE is resident of the Town of Chili in Monroe County, lives in the current Third Legislative District, a registered voter and works in the healthcare sector. This plaintiff desires to communicate with candidates for the Monroe County Legislature running in her district in the 2023 primary and general election, and she is interested in volunteering for, or contributing money to one of those candidates. However, without knowing the new district lines, this plaintiff is unable to discern which district she will reside in or who will be candidates for the County Legislature from that district.

23. Plaintiff ANGELINA RIVERA is a resident of the City of Rochester and a registered voter in Monroe County. This plaintiff desires to communicate with candidates for the Monroe County Legislature running in her district in the 2023 primary and general election, and she is interested in volunteering for, or contributing money to one of those candidates. However, without knowing the new district lines, this plaintiff is unable to discern which district she will reside in or who will be candidates for the County Legislature from that district.

24. All Plaintiffs expect to vote in their primary and general elections.

25. Defendant MONROE COUNTY is a municipal corporation organized and existing under and by virtue of the laws of the State of New York, which is comprised of the City of Rochester, 19 towns, and 10 villages, and according to the 2020 census from the United States Bureau of the Census, contains a total of 759,443 people.

26. Defendant ADAM BELLO is the Monroe County Executive elected by the voters of Monroe County. He is being sued in his official capacity.

27. Defendant SABRINA LAMAR is the duly elected president of the Monroe County Legislature, and she is being sued in her official capacity.

28. Defendant STEPHEN BREW is the majority leader of the Monroe County Legislature and is duly elected to such position, and he is being sued in his official capacity.

29. Defendant YVERSHA ROMAN is the minority leader of the Monroe County Legislature and is duly elected to such position, and she is being sued in her official capacity.

30. Defendant JACKIE ORTIZ is the duly elected elections commissioner for Monroe County and is being sued in her official capacity.

31. Defendant LISA P. NICOLAY is the duly elected elections commissioner for Monroe County, and is being sued in her official capacity.

**FACTS COMMON TO ALL CLAIMS**

32. In accordance with the United States Constitution, New York State Constitution, and New York Municipal Home Rule Law, the Monroe County Charter requires that after each decennial census, the legislative districts in Monroe County must be reapportioned, so that each district contains, to the extent possible, an equal or proportionately equivalent number of inhabitants in as compact a form as possible.

33.     The equal protection guarantee of "one person, one vote" was first articulated by the United States Supreme Court in Gray v. Sanders, 372 U.S. 368 (1963). The federal courts have applied this guarantee to local election districts. See e.g., Daly v. Hunt, 93 F.3d 1212, 1216-17 (4th Cir. 1996).

34.     These authorities require that all people in Monroe County's  legislative districts be reapportioned every 10 years to reflect population shifts shown in the census. The process of redrawing these County Legislative district lines is known as redistricting.

35.     Although a partisan legislative redistricting process has the force of law, in the event of a breakdown in the process and a failure of the County Legislature and the County Executive to agree on a Local Law that creates an acceptable redistricting plan for the 2023 County Legislative elections, it is the responsibility of a court to supervise the redistricting process in the County Legislature, according to criteria that are deemed to be just and consistent with state and federal laws, the constitutions of the United States and the State of New York, and the Monroe County Charter.

36.     "In Baker v. Carr, the Supreme Court held that the failure to reapportion periodically may violate the Equal Protection Clause. 369 U.S. 186 (1962). The Supreme Court has explained that "any standard other than population equality, using the best census data available, would subtly erode the Constitution's ideal of equal representation." Karcher v. Daggett, 462 U.S. 725, 731, (1983)." See also Mohr v. Erie Cty. Legislature, No. 11-CV-559S, 2011 U.S. Dist. LEXIS 85803 (W.D.N.Y. Aug. 4, 2011).

37.     Any court, upon petition after the legislative process has stalled, need not adhere to any elements of a partisan self-interested, redistricting process when carrying out this responsibility.

Indeed, the court, and its supervision of this process, is free to adopt the principles of independent redistricting in the interest of justice.

38.    In order to protect the constitutional principle of "one person, one vote," population equality is a hallmark of a fair redistricting proposal. The Supreme Court of the United States has held that local legislative districts and, by implication, the Monroe County legislative districts which are the subject of this action may, under certain circumstances vary as much as 10% between the most and least populous districts.  However, independent redistricting proposals and court-ordered redistricting plans typically reduce the maximum deviation, frequently to 2%.

39.    In order to achieve a redistricting plan consistent with the requirements of the United States Constitution, the State of New York Constitution, and the Monroe County Charter, the principles of population equality, contiguity, fair representation of minority groups, respect for political subdivisions, compactness and preservation of communities of interest, are to be considered.

40.    Contiguity refers to the principle that no district should be separated from itself entirely by another district, and that each district shall consist of contiguous territory as required by the laws and constitutional requirements of New York State and the Monroe County Charter.

41.    Fair representation of minority groups refers to the principle that racial and linguistic minority groups should have an equal opportunity with other citizens to participate in the political process and elect representatives of their choice. This principle is espoused in the federal Voting Rights Act.

42.    Respect for political subdivisions refers to complex requirements in the New York State constitution that essentially provide that, wherever possible, districts should not cross over town lines and districts should not include multiple communities.

43. Compactness refers to the principle that any two locations within the district should be as geographically close to each other as possible, and this principle is required by the laws and constitutional requirements of New York State and the Monroe County Charter.

44. Preservation of communities of interest refers to the principle that communities that have shared interests, including geographic, social, economic, or other interests, should be united in districts where possible.

45. A redistricting process that applies the principles of population of equality, fair representation of minority groups, respect for political subdivisions, compactness and preservation of communities of interest serves the interest of justice.

I.      **The Redistricting Process in Monroe County after 2020**

   (a)      **The Monroe County Charter**

46. The Monroe County Charter provides a method of revising the County Legislative district lines after the decennial census. The County Legislature is required to appoint a Legislative District Revision Commission to evaluate the existing legislative districts for equity and representation in relation to population within six months after the publication of the results of each regular federal census taken in the County.

47. Within three months after the submission of the report of the Commission, which shall be submitted to the County Legislature in the form of a proposed Local Law, the Legislature is required to conduct a public hearing on the proposed changes, if any, and then required to enact a Local Law setting forth revised district boundaries, subject to such permissive referendum as may be required pursuant to applicable state law.

48. The Commission is required to study the population data and within three months after appointment make recommendations, if necessary, in the form of a proposed Local Law as to

changes in the boundaries of legislative districts. In its deliberations to redesign the legislative districts, the Commission is required to comply with the equal protection clauses of the Fourteenth Amendment of the United States Constitution and Article I, §§ 1 and 11 of the New York State Constitution. Further, the Monroe County Charter requires that the legislative districts shall be of compact and contiguous territory to the extent possible.

**(b)     Monroe County's efforts to establish new districts that comport with the federal and state constitutions and the County Charter**

49.     In the summer of 2020, the County Executive proposed that the Legislature create an independent redistricting commission to oversee the redrawing of district lines in the Monroe County Legislature. This proposal was not brought to a vote before the County Legislature.

50.     In late December, 2021, the Legislature, consistent with the County Charter, advanced a Local Law, incorporating proposed district lines and consistent with the County Charter, by majority vote to the County Executive. The County Executive on January 7, 2022 vetoed this proposal.

51.     After the County Executive's veto in January 2022, the County Executive made a second proposal to establish an independent redistricting commission but the matter was never brought to a vote before the Legislature.

52.     On or about October 24, 2022, the County Legislature, by majority vote, advanced a new Local Law to the Monroe County Executive, amending the Monroe County Charter and the Monroe County Administrative Code relating to legislative district boundaries. This Local Law had been adopted by the Legislature at a special meeting on October 21, 2022.

53.     Pursuant to the New York Municipal Home Rule §21 and the Monroe County Charter, the County Executive vetoed the Local Law and returned it to the Legislature.

11

54. As a consequence of these actions, there is no Local Law in Monroe County governing the redistricting of legislative districts based on the 2020 decennial census to hold elections in 2023 for the Monroe County Legislature as required by the Monroe County Charter and which complies with the concept of the equal protection clause under the United States Constitution, the Constitution of the State of New York, other New York laws and the Monroe County Charter.

55. Monroe County's current legislative districts were last adjusted by Local Law in 2012 following the 2010 decennial census. Now that the 2020 census has been completed, Monroe County's 2012 redistricting is out of date and may not be used for subsequent legislative elections because the district lines contained in it violate the constitutions, laws and Charter detailed above.

56. Monroe County's current legislative districts lack population equality and violate the "one-person, one-vote" requirements of the equal protection clause of the United States and State of New York Constitutions, and the Monroe County Charter.

57. Under applicable constitutional principles established by the United States Supreme Court and the New York Court of Appeals, the County Legislative districts need not be apportioned in identical populations. A permissible constitutionally accepted deviation is permitted in any individual district provided that any district is within 10 percent in population of any other district.

58. For example, under the 2012 Local Law and the districts established thereunder, the largest district is District 9 in the Town of Penfield, which, according to the 2020 census, contains 28,713 people. The smallest district is District 21 which encompasses a portion of the City of Rochester. It has 23,405 people. District 9 has 22.6 percent more people than District 21. District 8 in Webster has 28,199 people and it has 20.4 percent more people than District 21. Districts 4, 12, 15 and 25 have more than 10 percent more people than District 21. The same larger districts have 10 percent more people than Districts 2, 3, 10, 16, 18, and 21. Under this analysis, 12 of the Monroe County

12

Legislature's 29 districts created by the 2012 Local Law are malapportioned and unconstitutional under the constitutions and laws of the State of New York, the United States and the Monroe County Charter.

59. Under the current Local Law and district lines established in 2012, certain Plaintiffs and Monroe County residents live in legislative districts that are under populated, and hence they have enhanced voting power in violation of the equal protection clause, state and federal laws, and the Monroe County Charter.

60. Under the current Local Law and district lines established in 2012, certain Plaintiffs and Monroe County residents live in legislative districts that are over populated, and hence they have diluted voting power in violation of the equal protection clause, state and federal laws, and the Monroe County Charter.

      **(c)    The impending election consequences without a Court approved redistricting plan in 2023**

61. MONROE COUNTY needs new legislative districts before the next elections for that body which will occur in 2023, when all 29 seats in the Legislature are before the voters of the entire County.

62. In that regard, the election calendar for 2023 for all 29 seats in the County Legislature will be upended if the Legislative District lines and map are not altered in the near future.

63. The legislative election process in Monroe County for members of the County Legislature will commence soon as it is anticipated that designation meetings for candidates of the major political parties – the initial step in the election process -- will occur sometime in December 2022 or January 2023 and petitioning for access to the ballot by all candidates, a lengthy and cumbersome process created by New York state law and dependent on candidates and voters knowing the districts in which they will compete will occur sometime early in 2023.

64.     A meaningful designation process cannot occur until the legislative districts are established in accordance with the law, the Constitution and the Monroe County Charter. Candidates need to know the outline of any district in which they seek to run for office.  Voters and the designating committees of the major political parties need to know that information as well so that local party committees can be established and candidates can pursue committee members to obtain party designations.

65.     As a result of the hopelessly stalled process of reapportionment and redistricting in Monroe County, the ability to complete Monroe County's  2023 legislative elections in a timely and legal fashion for 29 members of the Legislature and their electoral challengers, if any, is at significant risk.

66.     In light of the legislative stalemate and to remedy the current constitutional infirmity of the current legislative district lines, the court should take control of the redistricting process in Monroe County and appoint a special master to redraw the district lines pursuant to fair and legal criteria.

**COUNT ONE**
**VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 USC §1983**

67.     Plaintiffs re-allege and repeat as though set forth herein all allegations in paragraphs 1 – 66.

68.     The use of Monroe County's current legislative districts for the 2023 legislative elections would violate the constitution of the United States.

69.     Plaintiffs live in Monroe County in various legislative districts and without lawful redistricting consistent with the Constitution of the United States, the plaintiffs will be denied equal protection of the law and Monroe County's elected representatives in the county legislature will be elected in an unconstitutional election.

70.    Monroe County needs new legislative districts before the 2023 elections to comply with the requirements of the United States Constitution.

71.    To remedy the constitutional violations under the Constitution of the United States, the court should appoint a special master to prepare a constitutionally-acceptable redistricting plan. Upon presentation of an appropriate independent redistricting map by the special master, this court should adopt that plan and order the 2023 elections to the Monroe County Legislature to proceed using those districts.

72.    In the interest of justice, the special master appointed by the court, should be entirely independent of partisan interests, and the court's order appointing the special master should require that the special master's redistricting plan be independent of partisan interest. The court should order the special master to prioritize redistricting criteria, including population equality, contiguity, fair representation of minority groups, respect for political subdivisions, compactness, and preservation of communities of interest. Upon presentation of an appropriate independent redistricting plan by the special master, the court should adopt that plan and order elections to proceed for the Monroe County Legislature in 2023 using those newly established districts.

**COUNT TWO**
**VIOLATION OF THE NEW YORK STATE CONSTITUTION**

73.    Plaintiffs re-allege and repeat as though set forth herein all allegations in paragraphs 1-72.

74.    Monroe County's current legislative districts exist in violation of the population equality requirements of Article 3, Section 4 and Article 5 of the New York State Constitution.

75.    Certain Plaintiffs live in overpopulated districts and therefore their votes are diluted in violation of the New York State Constitution. As a consequence, those plaintiffs will be denied equal protection of the law and Monroe County's elected representatives in the county legislature will be elected in an unconstitutional election.

76. Monroe County needs a new legislative district map and law before the next elections for the County legislature which election process will commence early in 2023.

77. To remedy these violations of the New York State Constitution in a timely manner, this court should take control of the redistricting process and oversee the re-drawing of maps pursuant to fair and legal criteria.

78. The court should appoint a special master to prepare a redistricting plan in light of the legislative stalemate in Monroe County. In the interest of justice, the special master appointed by the court should be entirely independent of partisan interests and the court order appointing the special master should require that the special master's redistricting plan be independent of partisan interest. The court should order the special master to prioritize redistricting criteria, including population equality among the districts, contiguity, fair representation of minority groups, respect for political subdivisions, compactness, and the preservation of communities of interest.

79. Upon presentation of an appropriate independent redistricting plan by the special master, the Court should adopt that plan and order elections to the Monroe County Legislature to proceed in 2023 elections using those districts.

## COUNT THREE
## VIOLATION OF THE MUNICIPAL HOME RULE LAW

80. Plaintiffs re-allege and repeat as though set forth herein all allegations in paragraphs 1-79.

81. Section 10(13) of New York Municipal Home Rule provides, in pertinent part, that:

    a. A plan of apportionment adopted under this subparagraph shall comply with the following standards, which shall have priority in the order herein set forth, to the extent applicable:
        i. The plan shall provide substantially equal weight for the population of that local government in the allocation of representation in the local legislative body.
        ii. In such plan adopted by a county, no town except a town having more than one hundred and ten per cent of a full ratio for each representative, shall be divided in the formation of representation areas. Adjacent

> representation areas in the same town or city shall not contain a greater excess in population than five per cent of a full ratio for each representative.
>
> iii. The plan shall provide substantially fair and effective representation for the people of the local government as organized in political parties.
>
> iv. Representation areas shall be of convenient and contiguous territory in as compact form as practicable.

82. Certain plaintiffs live in overpopulated districts and therefore their votes are denied equal weight in violation of Section 10 of the New York Municipal Home Rule Law. As a consequence, those plaintiffs will be denied equal weight in the 2023 election of members of the County Legislature in violation of Section 10 of the New York Municipal Home Rule Law.

83. Monroe County needs a new legislative district map and law before the next elections for the County Legislature which will commence early in 2023 and any new map must comply with the requirements of Section 10 of the New York Municipal Home Rule Law.

84. To remedy these violations of Section 10 of the New York Municipal Home Rule Law in a timely manner, this court should take control of the redistricting process and oversee the re-drawing of maps pursuant to fair and legal criteria set forth in Section 10 of the New York Municipal Home Rule Law.

85. The court should appoint a special master to prepare a redistricting plan in light of the legislative stalemate in Monroe County. In the interest of justice, the special master appointed by the court, should be entirely independent of partisan interests and the court order appointing the special master should require that the special master's redistricting plan be independent of partisan interest. The court should order the special master to comply with Section 10 of the New York Municipal Home Rule Law and prioritize redistricting criteria, including population equality among the districts, contiguity, fair representation of minority groups, respect for political subdivisions, compactness, and the preservation of communities of interest.

86.     Upon presentation of an appropriate independent redistricting plan by the special master that complies with Section 10 of the New York Municipal Home Rule Law, the Court should adopt that plan and order elections to the Monroe County Legislature to proceed in 2023 using those districts.

**COUNT FOUR**
**VIOLATION OF THE MONROE COUNTY CHARTER**

87.     Plaintiffs re-allege and repeat as though set forth herein all allegations in paragraphs 1-86.

88.     Monroe County's current legislative districts, established by a Local Law in 2012, exist in violation of the population equality and other requirements of the Monroe County Charter.

89.     The Monroe County Charter provides, in pertinent part that any reapportionment plan devised by any Commission or embodied in any Local Law "shall comply with the equal protection clauses of the Fourteenth Amendment of the United States Constitution and Article I, §§ 1 and 11, of the New York State Constitution. Further, legislative districts shall be of compact and contiguous territory to the extent possible." County Charter, Article 2, Section C2-12(c)(4).

90.     Certain Plaintiffs live in overpopulated districts and therefore their votes are diluted in violation of the Monroe County Charter. Other Plaintiffs live in districts that are underpopulated and hence, their votes for members of the County Legislature are enhanced. In both instances, these voters are denied equal protection of the law and those facts violate the Monroe County Charter.

91.     Monroe County needs a new legislative district map and law consistent with the Monroe County Charter before the next elections process for the County Legislature which will commence as part of the designation process early in 2023.

92. To remedy these violations of the Monroe County Charter in a timely manner, this court should take control of the redistricting process and oversee the re-drawing of maps pursuant to fair and legal criteria.

93. The court should appoint a special master to prepare a redistricting plan in light of the legislative stalemate over the 2023 redistricting of the Monroe County Legislature. In the interest of justice, the special master appointed by the court should be entirely independent of partisan interests and the court order appointing the special master should require that the special master's redistricting plan be independent of partisan interest. The court should order the special master to comply with the Monroe County Charter and prioritize redistricting criteria, including population equality among the districts, contiguity, fair representation of minority groups, respect for political subdivisions, compactness, and the preservation of communities of interest.

94. Upon presentation of an appropriate independent redistricting plan by the special master that complies with the Monroe County Charter, the Court should adopt that plan and order elections to the Monroe County Legislature to proceed in 2023 using those districts.

## COUNT FIVE
## DECLATORY JUDGMENT PURSUANT TO 28 U.S.C. §2201

95. Plaintiffs re-allege and repeat as though set forth herein all allegations in paragraphs 1-94.

96. For the reason set forth in this complaint, Defendants, through the lack of completion of a redistricting plan for Monroe county, will deprive Plaintiffs and all citizens of Monroe County, in similarly situated and malapportioned districts, of their constitutional right to vote with equal weight with their peers in the 2023 County Legislative elections and, hence, will deny them equal protection, and due process under the law in violation of the United States Constitution, New York State Constitution, and the Monroe County Charter and cause them irreparable harm.

97. Plaintiffs are entitled to a declaratory judgment by this court, determining that Plaintiffs' constitutional rights have been violated and that in order for Plaintiffs to obtain the necessary relief, this court should implement a court ordered reapportionment plan such as may be necessary to vindicate those rights for the 2023 elections for members of the Monroe County Legislature.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief, as follows:

1. For an Order of judgment declaring Monroe County's current legislative district lines, as last adjusted by Local Law in 2012, to be invalid for the 2023 legislative elections because they fail to comply with the United States Constitution, the New York State Constitution, state and federal laws, and the Monroe County Charter;

2. For an order or judgment barring the defendants from taking any steps to conduct any election for the Monroe County Legislature in 2023 prior to the redistricting requested herein on the basis that any prior Local Law now fails to comply with the United States Constitution, the New York State Constitution, state and federal laws, and the Monroe County Charter;

3. For an Order or judgment declaring Plaintiffs' constitutional rights have been or will be violated by Defendants' inaction in the Monroe County redistricting process and the failure to produce a Local Law for redistricting of the County Legislature that complies with the United States Constitution, the New York State Constitution, state and federal laws, and the Monroe County Charter;

4. For an Order appointing an independent special master to propose new legislative district lines for the Monroe County Legislature that conform with the 2020 census, in accordance with the United States Constitution, the New York State Constitution, state and federal laws, and the Monroe County Charter which includes the following

principles: population equality, contiguity, fair representation of minority groups, respect for political subdivisions, compactness and preservation of communities of interest;

5. For an Order or judgment or injunction directing that Monroe County and the named defendants and those under their control provide immediately to the special master all information in their possession regarding the process for redistricting the Monroe County Legislature in the period from 2020 to date, including but not limited to any correspondence, public testimony or public information submitted during the redistricting process; any information provided at public hearings including transcripts thereof; any expert analysis of any dimensions of any plan for redistricting; any legal memoranda or other documents regarding any plans or proposals for the redistricting of the Monroe County Legislature; and such other and further information which this special master may deem appropriate in order to produce a redistricting law and map which complies with the Constitution of the United States, the Constitution of the State of New York, other New York State laws and Monroe County Charter for the election of members of the Monroe County Legislature

6. For an Order or judgment redrawing district lines in the County of Monroe for the Monroe County Legislature in conformity with the special master's proposal, assuming the special master's satisfactory completion of an independent redistricting proposal; and,

7. For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;

8. For any and all statutory damages allowed by law;

9. For costs of suit herein incurred; and

10. For such other and further relief as this Court deems just and proper.

Dated:        December 5, 2022

Buffalo, New York

**PENBERTHY LAW GROUP LLP**

/s *Brittanylee Penberthy*
Brittanylee Penberthy, Esq.
Attorneys for Plaintiff
Office & P.O. Address
227 Niagara Street
Buffalo, New York 14201
(716) 803-8402
bpenberthy@thepenlawgroup.com